338 So.2d 276 (1976)
STATE of Louisiana
v.
Jerry JENKINS.
No. 57479.
Supreme Court of Louisiana.
June 21, 1976.
On Rehearing October 19, 1976.
*278 Bobby L. Culpepper, Donald C. Brown, Baker, Culpepper & Brunson, Jonesboro, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ragan D. Madden, Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Jerry Jenkins, was charged by bill of indictment with aggravated rape, in violation of La.R.S. 14:42. He pleaded not guilty, and after trial by jury was convicted of attempted aggravated rape. He was sentenced to twenty years at hard labor and appealed his conviction on the basis of twenty assignments of error.
At approximately 2:30 in the morning on Sunday, July 27, 1975, the victim and a friend of hers, a Mr. Church, were conversing in her home in Ruston, Louisiana. The victim testified that she heard a noise which may have been the defendant entering her house through a window, but concluded that the sound was from the railroad tracks that ran near the house. When she got up to go to the bathroom, the defendant confronted her. She recognized him as a person she had seen at her place of business and at other locations in Ruston.
Defendant told the prosecuting witness that he had just committed a robbery and needed somewhere to stay. She testified that defendant appeared to be nervous, and so the victim, the defendant, and Mr. Church sat down in the living room. They talked for ten to fifteen minutes, and the defendant then told the victim to accompany him to the back of the house. The victim said that she hesitated, but finally complied when he pulled out a gun, keeping it out of Mr. Church's sight. They victim testified that the defendant then forced her to have sexual intercourse with him in her bedroom, during which he continued to hold the gun. She stated that she submitted to the act because of fear for her safety and defendant's specific threat to kill Mr. Church if she resisted.
After the forced sexual encounter the defendant and the victim returned to the living room, where they talked and drank some coffee with Mr. Church. The victim testified that defendant shortly thereafter expressed a desire that she return to the bedroom with him. He again pulled the gun out and on this occasion aimed it at the back of Mr. Church's head. Church testified that he heard a clicking sound, but didn't see the weapon since his back was to the defendant. Once again the prosecuting witness accompanied the defendant into the bedroom and had intercourse with him. They returned to the living room and talked with Mr. Church until 8:00 a. m., when defendant finally left.
The victim testified that, despite her emotional distress, she probably would not have reported the event to the police, except that the defendant began calling her at work. Thus, two days after she was allegedly raped, she complained to police and the instant charges were filed.

ASSIGNMENTS OF ERROR NOS. 1 THROUGH 9
Defendant's first eight assignments of error complain of various procedural defects in the conduct of the preliminary examination held after arrest and before the filing of the bill of information. His ninth assignment contends that the trial court erred in finding that the State established at the preliminary examination probable cause to detain defendant for committing aggravated rape. The various allegedly erroneous rulings of the trial judge include the following: allowing the prosecuting witness to testify that the defendant, before raping her, said that he had committed a robbery earlier that night; refusing to sequester the investigating officer; allowing the district attorney to ask the prosecuting witness leading questions; permitting the victim to testify as to telephone calls she believed were made to her by defendant *279 after the rape; and sustaining the State's objection of irrelevancy to two defense questions asked the victim.
Although all of the procedural safeguards of a criminal jury trial need not be afforded at a preliminary examination, the accused has a right to a hearing that insures a fair and impartial determination of the issue of probable cause. Absent an intelligent waiver thereof, the hearing may not be conducted without benefit of counsel for the defendant. La. C.Cr.P. art. 293; Art. I, § 13, La.Const. 1974; see Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). The hearing is to be full-blown and adversary, and one in which the defendant is entitled to confront witnesses against him and to have full cross-examination of them. La.C.Cr.P. art. 294. These provisions were fashioned after the A.L.I. Code of Criminal Procedure, §§ 46, 49, and generally comport with the more recent A.L.I. Model Code of Pre-Arraignment Procedure, 330.4(4), which would apply all the rules of evidence for trial in criminal cases to the preliminary examination, with some limited exceptions to the rule against admitting hearsay evidence.
We also note that the right to a preliminary examination has been accorded the status of a constitutional right in felony cases in Louisiana by the adoption of Art. I, § 14, La.Const. of 1974. The convention in drafting this article contemplated the type of formal, adversary proceeding provided for by our Code, including the right to subpoena and cross-examine witnesses. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 49 (1974). The elevation of the right to a preliminary examination to a constitutional guarantee reflects a recognition by the people of Louisiana of the importance of according an accused a prompt and thorough determination that there is sufficient cause to deprive him of his liberty.
At the same time, our La.Code of Criminal Procedure has specifically incorporated the concept that inconsequential defects in the conduct of the preliminary examination will not mandate release of the accused or rendering the proceeding invalid. La.C.Cr. P. art. 298 provides:
"A person ordered held in custody following a preliminary examination shall not be discharged on a writ of habeas corpus or by other process because of any informality or error in the commitment or the proceedings prior thereto that does not substantially prejudice him. No preliminary examination shall be held invalid for any purpose because of an informality or error that does not substantially prejudice the defendant."
This provision is substantially the same as § 60(1) of the A.L.I. Code of Criminal Procedure. The Official Revision Comment to our article 298 states that, although the redactors felt this provision was probably unnecessary since it is merely a restatement of the harmless error rule which applies to all proceedings, "* * * it was thought advisable to codify this basic principle."
We have reviewed the trial court rulings during the preliminary examination which were assigned as errors by the defendant. Each ruling complained of was either correct or, if technically inaccurate, did not prevent a full and fair hearing on the issue of probable cause. The State placed both the alleged rape victim and her companion, Mr. Church, on the stand, and they were subjected to thorough cross-examination by defense counsel. Defendant was offered an opportunity to present evidence but chose not to do so. We have also examined the record in light of defendant's allegation that the trial court consistently allowed the State greater latitude than the defense in questioning witnesses during the preliminary examination. This serious allegation, if proven, would affect the basic validity of the preliminary examination; however, our review of the *280 record does not reveal such partiality on the part of the trial judge, and we find that his rulings were generally correct and impartial. We conclude, therefore, that the proceeding was free of any informality or error that would have substantially prejudiced the defendant, and that the trial judge's finding of probable cause was not erroneous.
For the foregoing reasons, we conclude that Assignments of Error Nos. 1 through 9 are without merit.

ASSIGNMENT OF ERROR NO. 10
This assignment of error is based upon the defendant's allegations that the warrant issued for his arrest was defective and that his arrest was therefore illegal. We note, first of all, that an illegal arrest does not, in and of itself, void a subsequent conviction. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).
However, we have examined defendant's complaints as to the warrant's validity and find them to be without merit. The motion to quash the arrest attacked the warrant on the grounds that (1) it was issued upon an affidavit executed by the Police Chief of the City of Ruston rather than by the complaining witness, and was therefore based on hearsay rather than direct evidence; and (2) the judge issuing the warrant was the judge of the City Court, the jurisdiction of which does not extend to offenses prohibited by state law.
Louisiana Code of Criminal Procedure article 202 provides:
"A warrant of arrest may be issued by any magistrate, and, except where a summons is issued under Article 209, shall be issued when:
"(1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any; and
"(2) The magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it.
"When complaint is made before a magistrate of the commission of an offense in another parish, the magistrate shall also immediately notify the district attorney of the parish in which the offense is alleged to have been committed."
The terms of the article clearly do not require that the person executing the affidavit upon which the warrant is issued have firsthand knowledge of the offense alleged to have been committed. The complainant need only specify "to the best of his knowledge and belief" the basic details of the crime alleged to have been committed. Hearsay evidence may certainly form the basis for the issuance of an arrest warrant.
Article 202 authorizes "any magistrate" to issue the warrant, and does not demand that the court in which he presides have jurisdiction of the matter. Clearly, the City Judge of the City of Ruston is a magistrate within the meaning of the code, and had authority to issue the warrant for defendant's arrest.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 11
This assignment is based upon the trial court's refusal to require the State to answer a number of questions in the motion for bill of particulars. The function of the bill of particulars is to inform the defendant more specifically of the nature and cause of the charge against him. La. C.Cr.P. art. 484. It is not a discovery device or a means of securing the details of the State's evidence. State v. Simpson, *281 216 La. 212, 43 So.2d 585 (1949); State v. Rose, 271 So.2d 863 (La.1973).
The State properly refused to answer the ten questions which defendant complains should have been answered. Question 4 requested information as to where in the parish the offense charged was allegedly committed. This information had already been made known to the defendant at the preliminary examination, which was held before the filing of the motion for a bill of particulars. Questions 5 and 6 asked the time and place defendant was arrested and by whom. We have held that this sort of information goes beyond the scope of informing defendant of the nature and cause of the charge against him. State v. Hollingsworth, 292 So.2d 516 (La.1974).
Questions 7, 8, and 14 sought to discover how the State had determined the defendant committed the alleged crime, the date upon which the alleged crime was reported to the State, and the manner in which defendant allegedly committed the crime. Once again, this sort of information involves revealing the details of the State's evidence and need not be supplied to the defendant. State v. Frezal, 278 So. 2d 64 (La.1973).
Question No. 9 asked the date the crime was allegedly committed. This information was supplied in the bill of indictment, and there was therefore no need for the State to answer this question in the bill of particulars.
Questions Nos. 12 and 13 requested information as to whether any property of the defendant was searched or seized, and if so, requested a copy of the search warrant and a list of the names and addresses of persons having access to the seized items. Defendant was informed by the State that any search warrant together with the return would be in the record and available to him. Moreover, this Court has held that the above information may not be the subject of a motion for a bill of particulars. State v. Hollingsworth, supra.
Finally, Questions 17 and 18 sought the names and addresses of all witnesses in the case and the FBI and local arrest and conviction records of all persons the State intended to call as witnesses. The State's refusal to answer the questions in the bill of particulars was justified under our prior jurisprudence. State v. Devore, 309 So.2d 325 (La.1975).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 16
This assignment of error complains of the trial court's refusal to grant defendant's motion for a mistrial, made out of the presence of the jury after the prosecuting witness completed her testimony. The basis urged for the mistrial was the possible prejudice suffered by the defendant because the witness brought a pillow and pillow case with her to the stand, which were not referred to in her testimony or introduced into evidence.
The only ground for mistrial which might arguably be applicable under the facts of this case is "* * * prejudicial conduct in or outside the courtroom * * *" which "* * * makes it impossible for the defendant to obtain a fair trial * * *." La.C.Cr.P. art. 775. After carefully reviewing the record, we have concluded that the defendant was not prejudiced or denied a fair trial by the fact that the alleged rape victim held a pillow and pillow case when she testified. It is unclear what prompted this peculiar procedure and we have given it very close scrutiny. However, we are convinced that no harm resulted to defendant from the jury viewing these items and therefore conclude that this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 18
As his eighteenth assignment of error, defendant claims that he was prejudiced by *282 the district attorney reading to the jury the Webster's New International Dictionary's definition of the word "threat," a term included in the definition of aggravated rape.[*] Defendant argues that the redactors of the La.Code of Criminal Procedure and the legislature may not have intended the word "threat" to have the meaning ascribed to it in Webster's Dictionary, and that it was therefore improper to read the definition to the jury.
We note, first of all, that unless the legislature has attached a particular meaning to a term different from that usually understood in common parlance the common definition of the word will be presumed to be the one intended. State v. Saibold, 213 La. 415, 34 So.2d 909 (1948); State v. Robertson, 241 La. 249, 128 So.2d 646 (1961). In these two cases, this Court looked to Webster's Dictionary to determine the common meaning of statutory language, and, absent special circumstances, we see nothing wrong with this method of interpreting laws.
Moreover, the trial court instructed the jury that it must follow the law as given and defined by the judge, and not the attorneys. Thus, the jury was aware that the comments of the district attorney were merely argument and that they were not bound to apply the law as interpreted by the district attorney. Moreover, the argument was permissible, since counsel are allowed to argue the law applicable to the case. La.C.Cr.P. art. 774.
Because no apparent prejudice was caused defendant by the remarks related to this assignment of error, we find that it has no merit.

ASSIGNMENT OF ERROR NO. 19
During the State's closing argument, the following comments were made by the district attorney:
"[PROSECUTOR]:
"Now, getting to the panties, she said that he took her panties off and they were off when they had sexual intercourse. What bit of evidential value would it have to introduce into evidence the panties that were taken off that woman? He make [sic] a big hullabaloo about our not introducing into evidence the panties that were taken off. What evidential value would they have had? They would have had no value whatsoever. We'll admit right now that there was no sperm or spermatozoa on those panties, but it was on this sheet and it was on that pillow case. The defendant would have you to believe that this [witness] . . .
"[DEFENSE COUNSEL]:
"Your Honor, . . .
"THE COURT:
"Just a minute.
"[PROSECUTOR]:
"This fine lady . . .
"[DEFENSE COUNSEL]:
"Your Honor, at this time based on that remark, we would move for a mistrial. There is no testimony of anything on a pillow case.
*283 "[PROSECUTOR]:
"I'm not speaking of the pillow case, I'm talking of the sheet and the gown, the nightgown, the gown it was on. If I said pillow case, I mean . . .
"[DEFENSE COUNSEL]:
"We would move for a mistrial on that basis, combined with what we previously brought to the attention to the Court, Your Honor.
"THE COURT:
"The jury is instructed that the closing arguments of counsel have to be confined to the facts that have been introduced into evidence and the matters of general and common knowledge and to the fair and reasonable conclusions to be drawn therefrom and you are to disregard any reference to any matter that was not of fact introduced into evidence. The motion for mistrial is denied.
"[DEFENSE COUNSEL]:
"To which ruling we would object, Your Honor."
Defendant argues that the district attorney's reference to a pillow case that was not introduced in evidence prejudiced defendant so that he could not receive a fair trial, and that the trial court therefore erred in refusing to grant defendant a mistrial, as requested by counsel.
Louisiana Code of Criminal Procedure article 770 lists the comments which, if made by the district attorney or other named officials, mandate a mistrial. The reference made by the district attorney in his closing argument in this case does not fall into any of these categories. Thus, La.C.Cr.P. art. 771 is applicable. That article states:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
The court in the instant case admonished the jury to disregard the comment, which appeared to have been made inadvertently by the district attorney. The district attorney probably intended to refer instead to another article, the rape victim's nightgown, which contained spermatozoa and was admitted in evidence. Considering the judge's admonition and all of the circumstances of this case, the reference to the pillow case did not constitute grounds for a mistrial.
Thus, this assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 20
This assignment was based upon the trial court's refusal of defendant's motion for a mistrial due to a comment by the district attorney during his rebuttal. However, a statement made by defense counsel during his closing argument and before the district attorney's comment helps to place the prosecutor's statement in perspective:
"[DEFENSE COUNSEL]:
"The State chose not to require the attendance of Dr. Boyd who was the doctor *284 that [the victim] went to some four or five days after this alleged event. It would seem to me and in all the rape cases I have ever been involved in either defending or prosecuting when I was assistant D. A., one of the main witnesses that you always has [sic] is the doctor. He is one of the few impartial witnesses that you can get in a case like this but the State made no effort to get Dr. Boyd here to even testify about anything and I submit to you the reason they did not is that the testimony of Dr. Boyd would not have helped the State at all but that he would have to say that [the victim] didn't even tell him anything about being sexually molested. We tried to get Dr. Boyd here, we issued a subpoena to Dr. Boyd and I'm still checking to see what happened to the subpoenas. We tried to get the doctor here so that we could put him on the stand and question him since the State chose not to make any attempt whatsoever to get him here, but we were not successful."
In response to defense counsel's argument, the district attorney stated on rebuttal:
"[PROSECUTOR]:
"The only eye witnesses toall the eye witnesses, I say all the eye witnesses to this offense of aggravated rape were called and placed on this witness stand, every one of `em. There is [the victim] and Mr. Church, they were the only eye witnesses there and they were called and they testified. What could the doctor who examined this lady some week later, what could he add to the case? What would his evidence be worth? His evidence would be only worth this, and I lay the blame on the defense for not having him here, if [the victim] did not tell him she had been raped, he would have told the defense that she told him that and that would have been some kind of evidence in his favor, wouldn't it? The burden was upon the defendant to have that doctor here. He couldn't testify to save his life some week after the thing took place that this woman had been raped."
Defense counsel objected and the following discussion took place:
"[DEFENSE COUNSEL]:
"Your Honor, we object to that and move for a mistrial. The burden is not on us to have the doctor here on a rape case and [the prosecutor] knows that. I think it is improper to argue to the Jury the burden is on us to have someone here to establish that particular item, Your Honor.
"THE COURT:
"I again want to instruct the Jury that argument of counsel has to be confined to the facts that have been introduced into evidence and to fair and reasonable conclusion to be drawn therefrom and anything else, you are to disregard.
"[DEFENSE COUNSEL]:
"Did you rule on the motion, Your Honor?
"THE COURT:
"Did you move for . . .
"[DEFENSE COUNSEL]:
"I moved for a mistrial.
"THE COURT:
"The motion for mistrial is denied.
"[DEFENSE COUNSEL]:
"To which ruling we would object, Your Honor.
"THE COURT:
"That objection is made part of the record.
"[PROSECUTOR]:
"Ladies and gentlemen of the Jury, he raised the question of the doctor not being here. The defendant himself wanted to know why the doctor wasn't *285 here. I have the same right to ask him as to why that doctor wasn't here, and I'm asking him now wasn't he here, and he wasn't here. We said from the very beginning that that doctor couldn't add one bit of evidential value to the prosecution of this case. That's the reason he wasn't here."
Louisiana Code of Criminal Procedure article 774 states in pertinent part:
"The state's rebuttal shall be confined to answering the argument of the defendant."
The trial court admonished the jury to disregard any comments by counsel other than their argument on the evidence and reasonable conclusions drawn therefrom. We find that the comments of the district attorney were proper as answering on rebuttal defense counsel's argument, and that the admonition by the trial court assured that the jury would take those comments in the proper perspective.
Assignment of Error No. 20 has no merit.
Finally, we have reviewed Assignments of Error Nos. 12, 13 and 14 based upon the trial judge's actions with regard to allowing the State to recall the prosecuting witness to the stand, No. 15 based on the introduction of the victim's gown and sheet into evidence, and No. 17 based on the denial of defendant's motion for a directed verdict. We find no merit in these assignments as the action taken by the trial judge was in each respect within his authority as the judge presiding and supported by the law and the evidence.
For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.
SUMMERS and MARCUS, JJ., concur.
SANDERS, C. J., concurs in the result only.

ON APPLICATION FOR REHEARING
PER CURIAM.
In his application for a hearing the defendant points out that in our discussion of Assignment of Error No. 16 we erred in stating that the prosecuting witness brought a pillow and pillow case with her to the stand, which were not referred to in her testimony or introduced into evidence. Actually these events occurred during the testimony of Mrs. Judy Houston, a criminalist employed by the Northwest Louisiana Crime Laboratory. Otherwise, the facts were correctly stated in our original opinion. Defendant argues, however, that because the articles not introduced into evidence were held during a court appearance by the expert witness, instead of by the victim, that this peculiar procedure was much more harmful to his case than we appreciated upon our initial consideration.
After reviewing the pertinent portion of the record again, we are of the opinion that the fact that the pillow and pillow case were held by the expert witness, instead of by the alleged rape victim, did not render the occurrence more damaging to defendant's case. For the reasons stated in our original opinion in discussing Assignments of Error Nos. 16 and 19, although we do not condone or encourage such practices, we remain convinced that no harm resulted to defendant from the jury viewing these items. Therefore, we conclude the application for rehearing should be denied.
NOTES
[*] La.R.S. 14:42 provides:

"Aggravated rape is a rape, heterosexual or homosexual, committed where the sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
"(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force;
"(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution;
"(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
"Whoever commits the crime of aggravated rape shall be punished by death." (Emphasis added.)