450 So.2d 710 (1984)
STATE of Louisiana
v.
George SILBEY.
No. KA-1622.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1984.
*711 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Susan Scott Hunt, Asst. Dist. Atty., New Orleans, for appellee.
George H. Silbey, Sr., in pro. per.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant.
Before KLEES, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
Appellant, George Silbey was charged by grand jury indictment with the June 17, 1982 second degree murder of his estranged wife, Lela Silbey, a violation of La.R.S. 14:30.1. On March 9, 1983 he waived trial by jury and after a judge trial was found guilty of manslaughter, a violation of La.R.S. 14:31.[1] He was subsequently sentenced to serve twenty years at hard labor.
Appellant's appeal was originally filed by his counsel of record without any specifications of error. Later, appellant, on his own, submitted a hand written brief in which he complained of errors that were committed prior to and during his trial. After a careful review of appellant's handwritten brief we are able to conclude that he asserts the following specifications of error:
1. The trial court erred in allowing appellant's counsel to waive appellant's presence at his preliminary hearing.

*712 2. The trial court erred in allowing opinion testimony concerning appellant's presence in the victim's home.
3. The trial court erred in allowing opinion testimony to the effect that it was appellant who broke the door to the victim's home.
In addition to the errors cited by appellant we have reviewed the record for errors patent, as well as sufficiency of evidence.[2]La.C.Cr.P. Art. 920(2); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Raymo, 419 So.2d 858 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982).
The indictment was in proper form and signed by the grand jury foreman. The trial court acted appropriately in that appellant was present and represented by counsel at his arraignment, trial and sentencing. The verdict was responsive to the charge. The sentence was within the range mandated by law and all appropriate delays were accorded appellant in accordance with statutory parameters. As to "sufficiency of evidence", the following facts and testimony were adduced at trial.
Alberta Wilson, mother of the victim, testified that her daughter and appellant were separated and that her daughter lived alone with her child Tanya. At 3:00 a.m. on the date in question, appellant telephoned Mrs. Wilson and told her he was going to kill her daughter. She ignored his threat because he had made similar threats many times before. This time was different. Tanya Silbey, daughter of the victim and step-daughter of appellant, awoke at 5:30 a.m. to her mother's screams and appellant yelling, "didn't I tell you I was going to kill you?" Tanya climbed out of her bedroom window and ran next door to the landlord's house. The landlord, Julius Nelson, heard shots and at the urging of his wife went outside to retrieve his gun from his car. Several more shots were heard. Nelson then saw appellant emerge from Lela Silbey's house and start to walk away. Nelson held his gun on appellant ordering him not to move until the police arrived. Silbey told Nelson he had killed Lela and sat down to wait for the police.
The police investigation disclosed that the phone lines of Lela Silbey's house had been cut and that appellant had been shot twice by the victim as he tried to enter her house. The victim was found dead lying on the bathroom floor. She had been shot eight times at close range.
Appellant took the stand in his own defense. He claimed he went to his wife's house to borrow money, that he was sober at the time and that he cut the telephone wires because he did not want the police involved. He claimed he did not go there with the intention of killing her but only of scaring her. He stated he could not remember anything that happened after he cut the phone wires.
After a careful review of the record we conclude there are no errors patent.
Appellant was convicted of manslaughter in violation of La.R.S. 14:31. Under this statute, manslaughter occurs when a homicide which would be first or second degree murder[3] is committed "in sudden *713 passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection". If the trier of fact finds that the offender's blood had cooled or that an average person's blood should have cooled, then the homicide can no longer be classified as manslaughter. "Heat of blood" and "sudden passion" are not elements of the offense but rather are mitigating factors which reduce the grade of homicide to manslaughter. State v. Tompkins, 403 So.2d 644 (La.1981), appeal after remand 429 So.2d 1385 (La.1983); State v. McAllister, 366 So.2d 1340 (La.1978).
Viewing the evidence in the light most favorable to the prosecution, the trial judge could have found that the state proved beyond a reasonable doubt the elements of manslaughter.
We now turn to appellant's assignments of error.
ASSIGNMENT OF ERROR NO. 1.
Our Code of Criminal Procedure has specifically incorporated the concept that inconsequential defects in the conduct of the preliminary examination will not mandate release of the accused or render the proceeding invalid where the informality or error does not substantially prejudice the defendant. La.C.Cr.P. Art. 298; State v. Jenkins, 338 So.2d 276 (La.1976).
A review of the record indicates that at the time of the preliminary examination, appellant was in Charity Hospital recovering from the gunshot wounds he received the night of the shooting. Although all of the procedural safeguards of a criminal jury trial need not be afforded at a preliminary examination, the accused has a right to a hearing that insures a fair and impartial determination of the issue of probable cause. Our law does not mandate that the defendant must be present but only that he must be represented by counsel. La.C.Cr.P. Art. 293; Art. I, Sec. 13, La. Const.1974; State v. Jenkins, supra.
Because appellant was still hospitalized, his counsel waived his presence at the preliminary hearing. A review of that record reveals a fair and impartial determination of probable cause. This assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 2 and 3.
Appellant asserts that contradictory and opinion testimony by Melva Nelson was allowed during the trial to the effect that it was appellant in the victim's house at the time of the shooting and that appellant broke down the back door in order to gain entry. Appellant asserts that because the witness never saw appellant either in the house or saw him break down the door that this testimony should not have been allowed into evidence.
The law is clear that a witness, not qualified as an expert, can only testify as to facts within his or her knowledge and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have. La.R.S. 15:463. However, not every error committed during the trial of an accused is prejudicial error. An error is harmless if there is little likelihood that it would have changed the result; it must be clear beyond a reasonable doubt that the *714 constitutional error did not contribute to the conviction. State v. Frisco, 411 So.2d 37 (La.1982).
We have already reviewed the record for sufficiency of evidence and have found that, even absent the testimony of Melva Nelson, there was sufficient evidence for any reasonable trier of fact to find the defendant guilty of manslaughter. This assignment of error lacks merit.
For the above and foregoing reasons, appellant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] R.S. 14:31 provides:

Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration of attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killings would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
[2] We conduct such a review of the record because appellant's counsel initially filed a brief asserting no specific errors.
[3] R.S. 14:30 defines first degree murder as the killing of a human being:

(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing. For the purposes of Paragraph (2) herein, the term peace officer is defined to include any constable, marshal, deputy marshal, sheriff, deputy sheriff, local or state policeman, game warden, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, attorney general, assistant attorney general, attorney general's investigator, district attorney, assistant district attorney, or district attorney's investigator.
Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury.
R.S. 14:30.1 defines second degree murder as the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.