418 So.2d 547 (1982)
STATE of Louisiana
v.
Dora Mae SAVOY.
No. 81-KA-2924.
Supreme Court of Louisiana.
June 21, 1982.
Rehearing Denied September 3, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, Asst. Dist. Atty., for plaintiff-appellee.
Lawrence B. Sandoz, III, Leslie J. Schiff, Sandoz, Sandoz & Schiff, Opelousas, for defendant-appellant.
AUGUSTINE, Justice Ad Hoc [*].
The defendant, Dora Mae Savoy, was charged by grand jury indictment of March 9, 1981 with the second degree murder of Francis Sam, Jr. A jury of twelve heard this case on June 24-26, 1981 and returned a verdict of guilty as charged. The defendant was later sentenced to life imprisonment. On appeal, she raises ten assignments of error.
By the first assignment of error, appellant urges that her conviction should be reversed and a judgment of acquittal entered by this court, due to the State's failure to bear its burden of proving her guilt beyond a reasonable doubt.

I.
Francis Sam, Jr. and Dora Mae Savoy lived together in a common-law arrangement in Sunset, Louisiana. On the night of *548 February 10, 1981, Ms. Savoy shot and killed Francis Sam, Jr. with one bullet to the chest. The shooting took place on the front porch of the couple's residence. There were no witnesses other than the defendant herself.
Joseph Sam, the victim's brother, testified that on the night of February 10, he and John Eric Lewis had just left a pool hall and were walking towards the defendant's and victim's residence when a shot was fired. The men continued walking in the direction of the shot, and upon reaching the sidewalk in front of Savoy's house, the defendant called out to them. They saw the defendant Savoy on the front porch, standing over Francis Sam's body. The victim's feet were toward the front door of the residence; his head was almost on the top of the steps leading up to the porch. According to John Lewis, the defendant appeared to be very shaken, and told him that Francis Sam had accidentally shot himself while playing with a gun.
Joseph Sam, John Lewis and Dora Mae Savoy carried the victim from the front porch and placed him in the victim's pick-up truck parked in the front yard. Savoy then drove the victim to the Sunset Police Station, unaccompanied by either Joseph Sam or John Lewis. She still carried the pistol in her left hand while driving the truck with her right. When she neared the station, she threw the gun out of the driver's window and into a ditch on the opposite side of the street.
Upon arrival at the police station, Savoy gave a brief, unsolicited account of the incident to Officer Tim Allman. She told him that "Tatoo" (Francis Sam, Jr.) had just shot himself accidentally and was out in the truck, perhaps dying. She gave no further explanation. When Officer Allman went to the truck to determine the victim's condition, he found no vital signs. Upon being informed of Francis Sam's death, Savoy became hysterical and ran from the police station, finally collapsing about a block and a half away.
Shortly afterward, Officer Boss removed the victim's body from the front passenger seat of the truck. While doing so, he discovered a closed, sheathed knife on the floorboard. It belonged to the victim, and was later to become a key piece of evidence in the prosecution's case.
Later that night, Detectives Roy Mallet and Rene Spryer arrived at the station and, after advising the defendant of her Miranda rights, conducted an interrogation. This time, Savoy gave a different account of the shooting, stating, in essence, that Francis Sam was shot by another man in an argument over whiskey.
The next afternoon, Savoy gave a written statement to Detective Robert Daly, wherein she admitted for the first time that Francis Sam was killed while struggling with her over a gun. She stated that she and the victim had argued at a bar earlier that night, and that he came home drunk and threatening. She refused to allow him in the house, she said, but the victim was persistent in his efforts to get in, even to the point of repeatedly kicking on the doors, while cursing her the whole time. Looking out on the porch, Savoy saw that Francis Sam was armed with a knife. In response, Savoy said she went to her purse and retrieved her own gun. When she again looked out through the front door, Francis Sam thrust the knife at her, then grabbed her by the neck. A struggle ensued, each party armed and wrestling with the other. During the fight, as Savoy told it, the gun went off. Francis Sam fell to the porch, shot in the chest. Joseph Sam and John Lewis then came upon the scene and helped her put the victim in the truck. The defendant drove alone with him to the police station. Savoy admitted that along the way, she became scared and threw the gun out of the truck.
Detective Daly noted during the taking of this statement that the defendant showed no signs of having been in a struggleher clothes were not torn, her body had no obvious bruises or cuts. Their suspicions about Ms. Savoy growing, policemen returned to the scene for further investigation. On the way, they combed the streets of the route to the police station taken by *549 Savoy the night before. They found Savoy's discarded weapon in a ditch. Further inspection of the scene itself revealed no more significant evidence.
The coroner's examination did reveal evidence of some value. It was discovered that the bullet which killed Francis Sam was fired from a distance of between six inches and four feet and had a horizontal trajectory through the victim's body. Although the coroner removed a bullet from the body, subsequent ballistics tests were unsuccessful in matching the bullet with the defendant's gun, due to the lack of identifying striations on the pellet.
The above-stated facts comprised the whole of the State's case-in-chief against Dora Mae Savoy. There were no witnesses to the shootingthe evidence was entirely circumstantial.

II.
After the State rested its case, the defendant took the stand and told yet another version of the factsher fourth. While she maintained that Francis Sam had been shot in a fatal struggle over the gun, she gave a markedly different account of the events leading up to the shooting. Savoy told the jury that on the night of February 10, she and the deceased had a heated argument at a bar. The dispute concerned whether Francis Sam was sober enough to drive home. Savoy kept the keys to Sam's truck, despite his violent protest, and went home to cook supper. Later that night, when Francis Sam returned home (with the assistance of a Sunset policeman), the argument resumed inside the house. Savoy retreated to her own bedroom and locked the door. There she finished supper while Francis Sam banged and kicked the bedroom door, angrily demanding that she come out and continue the fight. After a while, he tired of badgering her and left the house, or so she thought. It was late by that time, and Savoy decided to secure the house for the night. As she entered the living room to lock the front door, she reached into the sofa to retrieve the gun which she had customarily hidden there. Holding the gun in her left hand, she was about to latch the door with her right, when Francis Sam suddenly burst through the door and attacked her with a knife. In the struggle for control of the weapons, Savoy's gun discharged, firing a bullet into Francis Sam's chest.
The remainder of the defendant's testimony was similar to the statement she had previously given to Officer Daly, except for the remarkable explanation as to why the gun happened to be found in the ditch; she stated that while driving the truck and at the same time trying to prop up the dying victim, she lost control of the vehicle. The gun flew out of her left hand and into the street.
Additional damage to Savoy's credibility as a result of that explanation was probably minora serious question as to her veracity had been already raised by the fact that each of Savoy's accounts of the incident was radically different. But the critical blow to her credibility came on cross examination when she tried to explain why the victim's knife, supposedly the weapon used against her, was found in the truck rather than on the porch, as would be expected. Savoy told the jury that the knife remained in Francis Sam's grasp even after he had been shot, and even after he was carried from the porch to the truck. She surmised that he dropped the knife to the floorboard en route to the police station. Not only was such an explanation utterly incredible, but also flatly contradicted by Joseph Sam (the victim's brother), who had helped to carry the victim to the truck. He stated that although he had seen Francis Sam carrying his knife earlier in the day, closed and in a scabbard, he did not see the knife at all on the night of the shooting, either on the porch or in the victim's hand.
The only real support for Savoy's claim of self-defense was provided by testimony concerning the victim's character and prior behavior. Savoy stated that following the argument at the bar, Francis Sam had come home drunk, angry and carrying a bottle of liquor. Savoy further stated that when Francis Sam drank to excess, which was a *550 frequent occurrence, he became argumentative and even violent. This fact was certified through the testimony of Officer Robert Daly, who knew Sam to be a problem drinker with several arrests for disturbing the peace, public intoxication and battery. Chief Boss testified that he had arrested Francis Sam sixteen times on a variety of charges, principally, driving while intoxicated, fighting and disturbing the peace.
There was little doubt that Francis Sam had been drinking heavily on the day of the shooting. Joseph Sam testified that he and Francis and J. S. Taylor had been drinking together early that afternoon. John Lewis testified that he and Francis Sam had a few drinks together later that night at a pool hall. Savoy herself testified that the original argument took place in a bar over the question of Francis Sam's capacity to drive home. Later, Officer Henry drove the victim home from a liquor storehe was carrying a bottle of Crown Royal.
There was also evidence that on the day of the shooting, Francis Sam was in one of his belligerent moods. Maxine Plumbar testified that that afternoon, the victim had caused a disturbance at a gas station, spinning the tires of his vehicle so as to throw rocks and gravel against her windshield. When Plumbar said something to him about his display of temper, he cursed her and drove off.

III.
The State has the entire and affirmative burden of proving beyond a reasonable doubt that a homicide was not perpetrated in self-defense. State v. Collins, 306 So.2d 662 (La.1975); State v. Patterson, 295 So.2d 792 (La.1974). The defendant who raises the issue of self-defense does not assume any burden of proof whatsoever, Collins, supra; Patterson, supra.
At the close of the trial there remained only one ultimate issue for the jury to decide: did the State prove beyond a reasonable doubt and, since this was a purely circumstantial case, to the exclusion of every reasonable hypothesis of innocence, that Dora Mae Savoy did not kill Francis Sam, Jr., in self-defense? Stated another way, did the State prove that Francis Sam, Jr., did not attack Dora Mae Savoy in such a manner as to give rise to a reasonable belief in her that she was in imminent danger of losing her life or receiving great bodily harm and that killing Francis Sam was necessary to save herself from that danger?
Our review of the jury's decision of this critical issue is governed by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which held that the relevant question which an appellate court must answer in cases such as this is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
We shall first consider the State's case-in-chief, as set out in part I of this opinion. An analysis of that evidence reveals that even if every fact relied upon by the State to prove its prima facie case were accepted as true, the defendant's guilt has not been proven.
Viewing the evidence in a light most favorable to the prosecution, a rational juror might conclude that Savoy fired the shot with the specific intent to kill or to do great bodily harm. However, none of the physical evidence bears on whether or not Francis Sam, Jr. attacked Ms. Savoy on the night of February 10neither the trajectory of the bullet, nor the distance from which the bullet was fired, nor the fact that the victim's knife was found in the truck (and not on the porch), nor the fact that Savoy did not appear to have been in a strugglenone of these facts is inconsistent with the reasonable possibility of self-defense.[1]
*551 The addition of testimonial evidence does not solve the matter for the State. We grant that Savoy was shown to be a consummate liar through the testimony of several policemen who recounted the various conflicting scenarios told by the defendant. But even the total destruction of Savoy's credibility does not entail the creation of affirmative, substantive evidence which weighs on the side of the State. Without such evidence, the State cannot be held to have proved lack of self-defense beyond a reasonable doubt.
In the absence of circumstantial evidence to prove the defendant's guilt, that is, the lack of self-defense, we are left with only the defendant's various accounts. The most that any juror could rationally conclude was that the defendant was lying, and that no one except the defendant will ever know to a moral certainty the truth as to what happened on the night of February 10,1981. In the absence of such a moral certainty, we must find no rational juror could have regarded the State as having proved its case beyond a reasonable doubt.
Accordingly, the judgment of conviction and the sentence of Dora Mae Savoy are hereby set aside and annulled, and a judgment of acquittal is entered on her behalf.
CONVICTION AND SENTENCE SET ASIDE AND ANNULLED, JUDGMENT OF ACQUITTAL.
MARCUS, J., and CIACCO and GAUDIN, JJ. ad hoc, dissent.
NOTES
[*] Judge Gaudin of the Court of Appeal, Fifth Circuit and Judges Ciaccio and Augustine of the Court of Appeal, Fourth Circuit, participated in this opinion as Associate Justices ad hoc, joined by Chief Justice Dixon, and Associate Justices Marcus, Blanche, and Watson.
[1] While the evidence does remove the reasonable possibility that Francis Sam, Jr., attacked with a knife, it does not eliminate the reasonable possibility that he attacked her in some other physical manner and with such force as to warrant Savoy's use of deadly force in self-defense.