GROVER L. COVINGTON, Judge.
Defendant, Daniel Hart, was indicted for manslaughter in violation of LSA-R.S. 14:31. Defendant entered a ,plea of not guilty. After trial by jury, defendant was found guilty and sentenced to 15 years at hard labor. He has appealed from his conviction and sentence.
Primarily, defendant argues that his conviction should be reversed because the state failed to satisfy its burden of proof beyond a reasonable doubt that the homicide was not committed in self-defense.[1]
LSA-R.S. 14:20 reads in pertinent part as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger ....
The state has the entire and affirmative burden of proving beyond a reasonable doubt that a homicide was not perpetrated in self-defense. State v. Lynch, 436 So.2d 567 (La.1983). The defendant who raises the issue of self-defense does not assume any burden of proof whatsoever on *792 that issue. State v. Savoy, 418 So.2d 547 (La.1982).
The relevant inquiry on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Lynch.
To prove its case against Hart, the State presented as witnesses the following persons: first, the mother of the victim identified the victim from a photograph showing him dead on the game room floor. Next, the chief investigator of the coroner’s office testified that Reid was dead when he arrived and he proceeded to remove the bullet by an incision in the back of the victim, although the investigator was not a medical doctor. The pathologist then testified as to the cause of death, which was a “gunshot wound to the chest.”
The state then placed on the stand two friends who were with the victim on the evening of the homicide. They testified to drinking beer at a nearby bar throughout the evening, and to going back and forth between the game room and the bar during the evening. Neither of the friends admitted to seeing the actual shooting, although they were in the game room and heard the shot. They said they were at the pinball machines, but not playing them at the moment. They told of Reid spitting tobacco juice on the floor as he played the games, and his ignoring of the requests and warnings by the managers (cashiers) not to do so, and of Reid being told to stop his conduct or leave the premises. They said there was an argument (which they could not hear so as to understand the words) between Reid and Hart. They denied that all three or four of them advanced on Hart in a threatening manner just before the shooting. They did not explain the whereabouts of the other friend at this time. Although there were several other persons in the game room (who are not identified in the record), they were not called by the state. Three of the police then testified to the scene when they arrived shortly after the shooting, and to the arrest of Hart. They retrieved the weapon. The ballistics test on the bullet removed by the investigator from the body of the victim was “inconclusive.” The state later recalled one of the victim’s friends, Terry Studder, in rebuttal. His testimony was not actually in rebuttal of the evidence of the defense but concerned the presence of the friend (who did not testify) at the time of the shooting, because Studder had not mentioned the friend in his direct testimony. In its argument the state contended that the shooting by Hart was done in anger, and that it was not justifiable because Hart had several alternatives to shooting Reid, such as retreating from the scene.
The defendant took the stand and testified to the shooting being in self-defense in that the victim and one or more of his friends came at him (defendant) in a threatening manner, and threatened to kill him. To some extent the defendant’s testimony was supported by a patron of the game room (who appears to have been a friend of the defendant), but who also did not see the actual shooting. The defendant’s wife corroborated the defense position as to the aggressive conduct of Reid.
The record establishes that Mr. and Mrs. Daniel Hart worked as managers or cashiers in and were to some extent in charge of a game room in Houma, Terrebonne Parish, Louisiana, during the evening hours of October 16, 1981. On the date in question, Scott Reid and a number of his friends patronized the game room to play the electronic games and shoot pool. During the course of the evening Reid and friends would come into the game room, play a few games and then go to a nearby bar. This activity continued for several hours, during which time Reid and friends consumed a considerable amount of beer and played a number of the electronic games (or shot pool), dividing their time as suited their pleasure between drinking and playing games. For some unexplained reason, when Reid first came in the game *793 room, he deliberately spit tobacco juice on the floor. Mrs. Hart, who was working alone at the time, requested Reid clean up the tobacco juice, or leave the premises. At that time, Reid and friends left the game room and went to the bar, where they drank beer. They then returned to the game room and played the games again. Reid continued to spit tobacco juice on the floor in disregard of Mrs. Hart’s request to him. As the evening progressed, with more games played and more beer drunk, Reid became increasingly aggressive, continuing to spit tobacco juice on the floor and banging on the electronic games, despite warnings not to do so.
When Hart got off work from his other job, he joined his wife in the game room and they had supper there together. Previously, the defendant had called his wife and asked her if she wanted him to come in. She had answered in the affirmative, and told him of the rowdy conduct and name-calling of the victim and his friends. Reid and friends continued to make their rounds of the bar and the game room. Mrs. Hart, after again explaining to her husband the trouble she had had with Reid, got off work for the night and went home.
Reid as well as his friends, continued to drink beer throughout the evening. Reid continued to spit tobacco juice on the floor. He also taunted, cursed and argued with Hart over the course of the evening. Reid also increased his banging and abusing of the electronic games despite repeated warnings to discontinue such conduct. The animosity between Reid and Hart increased as Reid became more abusive.
At about 10:00 p.m., Reid began threatening Hart and challenging him to come outside the game room. He then advanced on Hart who was behind the counter at the time, and threatened to kick out Hart’s brains. Hart testified that Reid and two friends advanced on him in a threatening and menacing manner, although this was denied by the friends at the trial. Hart pulled a .357 magnum revolver from under the counter, cocked it, set it on the counter, and warned Reid to stop. When Reid continued to advance, the gun fired, striking Reid in the chest and killing him instantly. Defendant stated that the gun went off, that he intended merely to keep Reid “at bay long enough for me to call the police.” To prevent Reid’s friends from further advance toward him, he recoeked the gun. Hart remained at the scene, holding the gun until the police arrived. He was then placed under arrest for the homicide of Scott Reid.
Our analysis of the state’s evidence convinces us that the defendant’s guilt has not been proven. Here, the evidence presented by the state fails to prove that Hart did not commit the homicide in self-defense. State v. Savoy.
For the reasons assigned, the judgment of conviction and sentence of Daniel Hart are hereby set aside and annulled, and a judgment of acquittal is entered in his behalf.
CONVICTION AND SENTENCE SET ASIDE AND ANNULLED, JUDGMENT OF ACQUITTAL ENTERED.
LOTTINGER, J., dissents and assigns written reasons.

. Defendant's other assignments of error are pretermitted.