568 So.2d 612 (1990)
STATE of Louisiana
v.
Rosemary MOORE.
No. 89-KA-1802.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 1990.
*613 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
John V. Baus, Jr., Blue, Williams & Buckley, Metairie, and Gerry Deegan, Galloway, Johnson, Tompkins & Burr, New Orleans, for defendant/appellant.
Before WARD, ARMSTRONG and BECKER, JJ.
*614 BECKER, Judge.
Defendant was indicted by a grand jury for the second degree murder of Basil Moore on May 15, 1988. She entered pleas of not guilty and not guilty by reason of insanity. She was tried on April 4, 1989, by a twelve-person jury which found her guilty of manslaughter. Defendant was sentenced on May 31, 1989, to ten (10) years at hard labor but the sentence was suspended and the defendant was placed on five (5) years active probation with the special condition that she serve two (2) years in Orleans Parish Prison.
She has appealed, relying on four assignments of error.
On the evening of May 15, 1988, defendant and her husband Basil "Buck" Moore got into an argument over money, and Mr. Moore told her he was leaving her. Mrs. Moore left the apartment after Mr. Moore gave her his keys to the apartment. When Mrs. Moore returned, she found that her husband had taken his belongings and vacated the apartment. Mrs. Moore called a friend and was talking to her when Mr. Moore returned to the apartment. He demanded to be let into the apartment to get his work shoes and a cap. Mrs. Moore refused to let him in believing he had nothing left in the apartment.
Mr. Moore had a knife, and he used it to cut the outside wire leading to the cable television. He then started banging on the apartment door which was made of glass and wire. Mrs. Moore told him she would not call the police if he would leave. She also told him she had a gun and was going to use it. Mrs. Moore took her gun and shot through a window next to the front door. The shot entered Mr. Moore's body in a upward trajectory and fatally wounded him. When the police arrived at the apartment, Mrs. Moore was hysterical and said she only meant to scare her husband.
Mrs. Moore testified she was afraid of her husband because he had beaten her numerous times in the past. She also testified that he shot at her on two different occasions. She testified he became violent after he used drugs which were mainly cocaine and marijuana. They separated several times, the last time being in 1986 when she got her own apartment. After living there a year, she let her husband move in with her, and they lived there together until the fatal shooting. Mrs. Moore's daughter, Veronica Griffin, testified about Mr. Moore's abuse of her mother; but she also testified that she had not witnessed any abuse in the year prior to the shooting.
Mrs. Moore testified that at some time before the shooting, Mr. Moore pulled the telephone cord out of the wall and that the phone would function only if the cord were held in place. The police officer who investigated the shooting testified the phone rang while he was in the apartment, but Mrs. Moore denied that the phone rang. She stated she did not call for help when Mr. Moore was banging on the door because she was afraid he was going to break down the door and get into the apartment.
Mr. Moore's aunt, Gwendolyn Hornsby, testified that the night before shooting, she and the Moores were out playing bingo, and that Mrs. Moore stated she was going to kill her husband. Ms. Hornsby also testified that while at the bingo game Mrs. Moore ordered him to get away from her and Mr. Moore complied. Ms. Hornsby stated she had no knowledge that her nephew ever hit his wife and that Mrs. Moore was the dominant member of the marriage.
Mrs. Moore testified she believed her husband had been using drugs the night of the shooting because of his behavior and because earlier in the day he had borrowed money from her mother but later claimed to have no money. This led to the argument which resulted in Mr. Moore's moving out of the apartment. Tests done on Mr. Moore's blood were negative for drugs and alcohol.
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NOS. 1 & 4
In these two assignments of error, defendant complains that the State presented insufficient evidence to support her conviction for manslaughter. She argues the *615 State failed to prove she did not act in self-defense because the evidence did not exclude every reasonable hypothesis of innocence. She also argues the State failed to present any evidence regarding sanity after she presented sufficient evidence of insanity.
The standard for reviewing a claim of insufficient evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
In State v. Mussall, 523 So.2d 1305, 1311 (La.1988), the Supreme Court stated:
After reviewing Jackson and the foregoing authorities, we conclude that a reviewing court may not disregard its duty under due process of law as interpreted by Jackson v. Virginia simply because the record contains testimony which tends to support each fact necessary to constitute the crime. If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally. The actual trier of fact's rational credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution, and by the admonition that the sufficiency inquiry does no require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Thus, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. As Professor Wright observes, the important points are that `the court is not to substitute its judgment of what the verdict should be for that of the jury, but that at the same time the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.' 2 C. Wright, supra, § 467, at 660-661 & n. 23. (Footnotes omitted)
The Supreme Court further stated that under Jackson v. Virginia, supra, the reviewing court is not permitted to consider just the evidence most favorable to the prosecution but to consider the whole record since that is what a rational trier of fact would do. Id., 523 So.2d at 1310. If rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. Id.
R.S. 14:31 provides:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
"Heat of blood" and "sudden passion" are not elements of the crime, but rather they are factors which serve to mitigate the grade of the offense from homicide to manslaughter. State v. Lombard, 486 So.2d 106 (La.1986); on remand 501 So.2d 889 (La.App. 5th Cir.1987) writ denied, 506 So.2d 504 (La.1987). State v. *616 Silbey, 450 So.2d 710 (La.App. 4th Cir. 1984). Because these are mitigating factors, the defendant must establish them by a preponderance of the evidence in order for a verdict of manslaughter to be appropriate. State v. Lombard, supra; State v. Arabie, 496 So.2d 554 (La.App. 1st Cir. 1986), writ denied 502 So.2d 565 (La.1987).
Under R.S. 14:20(1), a homicide is justifiable when committed in self-defense by one who reasonably believes he is in imminent danger of being killed or receiving great bodily harm and that the homicide is necessary to save himself from danger. State v. Allen, 463 So.2d 860 (La. App. 4th Cir.1985). When self-defense is asserted by a defendant, the burden of proof is on the State to prove beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Green, 483 So.2d 957 (La.1986), app. after remand 491 So.2d 502 (La.App. 3d Cir.1986). One of the factors in determining whether defendant was reasonable in his belief that he was in imminent danger is the possibility of retreat rather than the use of deadly force. State v. Collins, 306 So.2d 662 (La.1975); State v. Howard, 443 So.2d 632 (La.App. 3d Cir.1983), writ denied 444 So.2d 1215 (La. 1984). In State v. Dill, 461 So.2d 1130 (La.App. 5th Cir.1984), writ denied 475 So.2d 1106 (La.1985), the Fifth Circuit also considered whether deadly force was mandated by the situation, whether the victim was warned or whether the defendant could have aimed at a less vital area.
Defendant relies heavily on State v. Savoy, 418 So.2d 547 (La.1982), in which the defendant's conviction for second degree murder was reversed on the basis of insufficient evidence. The defendant shot and killed her common-law husband with one shot to the chest while on the front porch of their home. The defendant gave four inconsistent versions of the shooting, and there were no witnesses to the shooting. In one version, the defendant stated the victim accidentally shot himself; in a second version, she said the victim was shot by another man during an argument. In the third and fourth versions, the defendant stated the victim was shot when she and the victim struggled over her gun after he tried to attack her with a knife. However, there were major differences between the third and fourth versions concerning the circumstances leading up to the shooting. The victim's knife was found on the floorboard of his truck, and the knife was closed and sheathed when found. The victim's brother and a friend testified the victim had been drinking heavily that day, and there was other testimony that the victim became belligerent when drunk. The Supreme Court held that the State failed to prove beyond a reasonable doubt the defendant did not kill the victim in self-defense and that the circumstantial evidence did not exclude every reasonable hypothesis of innocence. Even though the defendant was a "consummate liar," the State did not introduce evidence inconsistent with the reasonable possibility of self-defense.
The State argues that Savoy is distinguishable on the basis that the defendant shot Basil Moore from behind a locked door and Moore's aunt testified that the defendant threatened to kill Moore the night before. Defendant contends the aunt's testimony is not credible and could not have been believed by the jury or else it would have convicted defendant of second degree murder. Defendant points to the aunt's failure to report the threat until the grand jury hearing several months after the shooting and to the aunt's testimony concerning defendant's need to buy a gun. The defendant asserts that by disregarding the aunt's testimony there is no evidence that the shooting of Basil Moore was feloniously committed. She contends the evidence did not exclude the reasonable possibility that defendant fired a "warning shot" which struck and fatally wounded Moore who was the aggressor and who could have withdrawn from the confrontation.
Defendant also cites as support State v. Stratton, 521 So.2d 842 (La.App. 2d Cir. 1988), in which the defendant's conviction for manslaughter for the shooting of his wife was reversed. The defendant shot his wife when she attacked him with a pair of scissors. The Second Circuit concluded the *617 defendant shot her in self-defense because the only evidence that the shooting was not justified was the testimony of the pathologist. The pathologist testified that based on the trajectory of the bullet the victim's head was not facing the defendant and thus she was not confronting the defendant when he shot her. But the pathologist admitted he would have to know the gun's location in order to state definitely his conclusion as to the position of the victim's head. The court found it was as equally reasonable to conclude the victim attacked the defendant and he shot her to protect himself as it was to conclude that the defendant's conduct was unreasonable.
Both Savoy and Stratton involved situations in which there was a face-to-face confrontation between the defendants and their victims. However, here there was no actual face-to-face confrontation between the defendant and the deceased. There was a locked door separating them. Mrs. Moore may have been in some danger, but it was not imminent danger. Although the telephone was not in perfect working order, it was still functional and could have been used to call for assistance. The State therefore presented sufficient evidence to prove the defendant did not act in self-defense.
The evidence adduced by the State further supports a conviction under R.S. 14:31(1) assuming the jury believed the testimony of Gwendolyn Hornsby. Mrs. Hornsby testified the defendant threatened to kill Moore the night before the shooting. This threat would be adequate proof that the defendant had the requisite intent when she shot her husband. The evidence also supports a conviction for manslaughter under R.S. 14:31(2)(a) in that, the defendant committed the homicide while engaged in the perpetration of aggravated assault. State v. Vivian Heck, 560 So.2d 611 (La.App. 4th Cir.1990). The defendant testified she, only intended to fire a warning shot at her husband, not kill or wound him. She therefore admitted to an aggravated assault which is an intentional misdemeanor directly affecting the person.[1]
The defendant claims in her fourth assignment of error that she was suffering from "battered women's syndrome," and argues that, as a result, her shooting of her husband was reasonable because of her belief she was in danger of receiving great bodily harm. Defendant asserts that because she proved she was insane, i.e. suffering from battered women's syndrome, the State was required to prove her sanity beyond a reasonable doubt which they failed to do.
R.S. 15:432 provides that a defendant is presumed sane; and under C.Cr.P. art. 652, the defendant has the burden of proving the defense of insanity by a preponderance of the evidence. Further, R.S. 14:14 provides:
If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
The question of whether or not a defendant has proven insanity is one for the jury; and all of the evidence, including lay and expert testimony, and the conduct and actions of the defendant, should be considered by the jury in determining sanity. State v. Marmillion, 339 So.2d 788 (La.1976); State v. Pravata, 522 So.2d 606 (La.App. 1st Cir.1988), writ denied 531 So.2d 261 (La.1988).
On appellate review, the inquiry is whether, under the Jackson v. Virginia standard, any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. State v. Claibon, 395 So.2d 770 (La.1981); State v. Bell, 471 So.2d 277 (La.App. 4th Cir.1985). If there is conflicting evidence on the issue of insanity, the reviewing court should accord great weight to the jury's resolution of the conflicting evidence provided the jury was properly instructed and no evidence was *618 prejudicially admitted or excluded. State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied 456 So.2d 171 (La. 1984). The jury's decision should not be overturned unless no rational juror could have found the defendant failed to prove his insanity at the time of the offense. State v. Sharp, 418 So.2d 1344 (La.1982).
In State v. Burton, 464 So.2d 421 (La.App. 1st Cir.1985), writ denied 468 So.2d 570 (La.1985), the defendant, convicted of the manslaughter of her husband, pleaded not guilty and not guilty by reason of insanity on the basis of battered women's syndrome. The trial court ruled that evidence of the relationship between the defendant and her husband was inadmissible, and the First Circuit affirmed. The defendant argued the evidence was admissible so that her conduct could be judged in light of her history as a battered wife and the history which caused it would have demonstrated her reasonable perception of imminent danger. The court rejected the assertion that the defendant reasonably believed herself to be in danger and thus refused to apply the battered women's syndrome as a defense.
The only expert testimony concerning defendant's insanity came from Winnie Marrell, a counselor for five years at the Y.W. C.A.'s Battered Women's Program. The trial court refused to qualify her as an expert in psychology but did qualify her as an expert in the field of counseling in battered women's syndrome. Ms. Marrell counseled defendant after the shooting and opined that defendant had a classic case of battered women's syndrome. Ms. Marrell further stated that at the time of the shooting, defendant was totally traumatized and in shock and that she was not able to distinguish whether or not she had done anything wrong.
The testimony presented by the defendant did not prove, by a preponderance of the evidence, that she was insane at the time of the offense. The defendant's actions before, during and after the shooting did not indicate she was suffering from a mental disease or defect which rendered her incapable of distinguishing right from wrong. Therefore, a rational jury could easily have concluded the defendant failed to prove, by a preponderance of the evidence, her insanity at the time of the offense.
Assignments of error one and four are without merit.

ASSIGNMENT OF ERROR NO. 2
In the second assignment of error, defendant complains the trial court erred in overruling her objections to comments made by the State in its closing argument which were outside of the evidence. At trial, the question arose as to whether Basil Moore was either intoxicated or under the influence of drugs when he went to the defendant's apartment. Both Angela Comstock and Ruby Ory of the coroner's office testified their tests of Moore's bodily fluids were negative for the presence of alcohol and certain drugs, excluding LSD and marijuana. They also were examined on the accuracy and reliability of their tests.
During the State's closing rebuttal argument, the following transpired:
BY MR. OLSEN:
NOW, MR. DEGAN, THE REAL THRUST OF HIS ARGUMENT WAS THAT MS. COMSTOCK AND MS. ORY, WHEN THEY TESTIFIED THAT THERE WASN'T ANY ALCOHOL IN THIS MAN'S BLOOD OR ANY DRUGS IN THAT MAN'S BLOOD, THAT YOU HAVE TO THROW THAT OUT THE WINDOW. YOU KNOW NOW THAT BASIL MOORE DIED AT 12:04 A.M., BEING SHOT ABOUT 10:50. AND THEY COULD HAVE EXTRACTED THOSE FLUIDS FROM HIS BODY THE NEXT DAY, FIVE DAYS LATER, SIX DAYS LATER, BECAUSE YOUR BODY, WHEN YOU DIE ... WHEN HIS HEART STOP BEATING AT 12:04 ...
BY MR. DEGAN:
OBJECTION, YOUR HONOR, THERE'S BEEN NO TESTIMONY TO THAT EFFECT.
*619 BY THE COURT:
OVERRULED, MR. DEGAN. AND LADIES AND GENTLEMENT, YOU ALL MAKE THE DETERMINATION WHAT YOU HEARD AND WHAT YOU DIDN'T.
BY MR. OLSEN:
WHEN HIS HART STOPPED BEATING HIS BODY QUIT METABOLIZING THOSE FLUIDS. HIS LIVER QUIT BREAKING DOWN THE ALCOHOL. AND THE REST OF HIS BODY ORGANS QUIT BREAKING DOWN WHAT WE CALL METABOLOZING
. . . . .
BY MR. DEGAN:
JUDGE, I HAVE TO ENTER AN OBJECTION HERE, THERE HAS BEEN ABSOLUTELY NO TESTIMONY AS TO WHAT BODY ORGANS OR ... THE ONLY TESTIMONY FROM MS. KORY WHO SAID IT HAS TO BE TAKEN WITHIN FOUR HOURS.
BY THE COURT:
MR. DEGAN, YOU'RE NOT ARGUING ANY MORE. YOU HAD YOUR CHANCE. LADIES AND GENTLEMENT,...
BY MR. DEGAN:
BUT HE CAN'T ...
BY THE COURT:
MR. DEGAN, DON'T GET UP AGAIN ON THAT SUBJECT. HAVE A SEAT.
BY MR. DEGAN:
NOTE MY OBJECTION.
BY THE COURT:
LET IT BE NOTED, MR. DEGAN. LADIES AND GENTLEMENT, AGAIN, YOU REMEMBER WHAT YOU HEARD; YOU REMEMBER WHAT YOU DIDN'T HEAR. IF YOU DIDN'T HEAR IT, YOU'RE NOT TO CONSIDER IT. PROCEED.
Under C.Cr.P. art. 774, closing argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact drawn therefrom and to the applicable law; and rebuttal shall be confined to answering the defendant's argument. When the prosecution's remarks go beyond the scope permitted by C.Cr.P. art. 774, those remarks are to be considered harmless unless the reviewing court is thoroughly convinced they inflamed the jury and contributed to the verdict. State v. Washington, 522 So.2d 628 (La.App. 4th Cir.1988), writ denied 523 So.2d 1321 (La. 1988) cert. den. 488 U.S. 834, 109 S.Ct. 94, 102 L.Ed.2d 70 (1988).
Although, the remarks of the prosecutor were beyond the scope permitted by Article 774, they could not have so inflamed the jury that they contributed to the verdict. This assignment of error is also without merit.

ASSIGNMENT OF ERROR NO. 3
In her third assignment of error, defendant complains the trial court improperly admitted into evidence the proces verbal of the autopsy because the coroner who performed the autopsy on Basil Moore was not called to testify as to its authenticity. Defendant argues that because the proces verbal was improperly admitted, the evidence was legally insufficient to support her conviction since there was no evidence as to Moore's cause of death and thus she is entitled either to an acquittal or a new trial.
C.Cr.P. art. 105 provides in part:
A coroner's report and a proces verbal of an autopsy shall be competent evidence of death and the cause thereof, but not of any other fact.
Since the trial of this matter took place in April, 1989, the new Code of Evidence applies to determine whether the proces verbal was properly admitted. C.E. arts. 901 et seq. deal with the authentication of evidence. Article 901(A) states that the requirement of authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it to be. Article 902 sets forth exceptions to the requirement of extrinsic evidence of authenticity as a condition precedent to admissibility. Article 902(1) provides:

*620 (1) Domestic public documents under seal.

A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory or insular possession thereof, as of the Panama Canal Zone, or the Trust Territory of the Pacific Islands or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
(2)(b) Certified Louisiana public documents.

A purported record, book, paper, or other document of the State of Louisiana, or of a department, board, or agency thereof or of a political subdivision of the state or a department, board, or agency of such a subdivision when certified as being the original by an officer or employee who identifies his official position and who either has custody of the document or who is otherwise authorized to make such a certification.
Comment (b) states that the term "public documents" refers to documents reflecting the acts of government and the official activities of its officers, agents and employees. The comment also states that this article deals with original public documents. The proces verbal is a public document. A review of the proces verbal, which was State's Exhibit No. 1, shows the document to be the original document. Since the proces verbal admitted into evidence is an original public document, signed and under seal of the Coroner of Orleans Parish, the trial court did not err in admitting it into evidence. This assignment is likewise without merit.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] R.S. 14:31(2)(a).