LANIER, Judge.
The defendant, Arthur Thompson, was charged by grand jury indictment with first degree murder, in violation of La.R.S. 14:30. He pled not guilty and, after trial by jury, was found guilty as charged. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This appeal followed.
FACTS
On Sunday morning, January 8, 1989, the defendant climbed through a window and entered the rectory of the Sacred Heart Church in Lacombe, St. Tammany Parish, Louisiana. He looked inside a desk and found a cigar box containing approximately $550 cash. He placed this box under his arm and attempted to leave when the victim, Father William O’Brien, the pastor of Sacred Heart Church, confronted him. The victim grabbed the defendant, and a struggle took place. The defendant threw the victim against the wall and beat him with his right fist. Even after the victim fell to the floor, the defendant struck him twice with his fists before fleeing out the back door. The victim bled to death as a result of severe lacerations to his face. His body was discovered a short time’ later.
Meanwhile, after going home to change his bloody clothes, the defendant was subsequently stopped and arrested for several traffic violations. When the authorities learned of the victim’s murder that morning, they immediately suspected the defendant. The defendant made a videotaped confession to the murder.
At the trial, the assistant coroner, Dr. Fraser MacKenzie, testified the victim bled to death as the result of “multiple traumatic injuries with extensive facial lacerations.” These injuries were caused by a blunt force or trauma, and they were consistent with injuries which could have been caused by State Exhibit 9, an iron rod wrapped in duct tape which had been seized from the defendant’s truck. This iron rod was fourteen inches long, one inch in di *1153 ameter, and weighed approximately three pounds. However, Dr. MacKenzie testified that the victim’s skull had not been fractured. Furthermore, both Dr. MacKenzie and the defendant’s expert witness, Dr. Milton Cox, testified that if State Exhibit 9 had been used to inflict the victim's injuries, they would have expected more tissue to be found on this weapon. In fact, Dr. Cox’s examination of State Exhibit 9 revealed that there was only a small amount of blood and no human tissue on the iron rod.
At the trial, the defendant testified that he did not enter the rectory with State Exhibit 9 and did not use this weapon against the victim. Instead, he explained that he threw the victim against the wall and struck him several times with his right fist in order to free himself from the victim’s grasp. The defendant testified that he did not intend to kill the victim. In his videotaped confession, the defendant stated that the victim was still breathing when he fled through the back door.
SUFFICIENCY OF THE EVIDENCE
In his only assignment of error, the defendant contends that the evidence was insufficient to support his conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. La. C.Cr.P. art. 821; State v. King, 563 So.2d 449 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
LSA-R.S. 14:30 provides, in pertinent part, as follows:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, first degree robbery, or simple robbery;
[[Image here]]
LSA-R.S. 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being;
[[Image here]]
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
In his brief to this court, the defendant concedes that he killed the victim during the perpetration of an aggravated burglary. See La.R.S. 14:60(3). He contends that he did not have the specific intent to kill the victim or inflict great bodily harm upon him and, therefore, the evidence supports only a conviction of second degree murder. See La.R.S. 14:30.1A(2). We disagree.
At trial and on appeal, the main contention between the State and the defense is whether or not the victim’s injuries were inflicted with the defendant’s fists or with State Exhibit 9, the solid iron rod wrapped in gray duct tape which was retrieved from the defendant’s truck. Of course, if the defendant used this iron rod to beat the victim, a specific intent to kill or inflict great bodily harm could easily be inferred from such conduct. However, the trial testimony of the expert witnesses for the State and the defense seem to negate the use of this iron rod. While the use of such a weapon would have been consistent with the type of injuries which caused the victim’s death, the lack of tissue and the small amount of blood found on the iron rod suggest that it was not used to inflict these injuries. In any event, it is not the source of these injuries (whether the defendant’s fists, the iron rod, or some other instrument), but the severity of the injuries, which we find to be sufficient proof of a specific intent to inflict great bodily harm.
Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the *1154 prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10. Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant’s actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273 (La.App. 1st Cir. 1984). The defendant testified that the victim grabbed him and a struggle took place. He stated that he did not intend to kill the victim, he only wished to free himself and escape. Yet, in his videotaped confession, the defendant admitted that he struck the victim twice after the victim was already on the floor. Such testimony is inconsistent with his explanation that he only struggled with the victim in an attempt to flee. Consequently, no matter what the defendant used to inflict the victim’s injuries, the severity of these injuries and the fact that the defendant struck the victim at least twice after he had fallen is sufficient to prove that, at the very least, he had the specific intent to inflict great bodily harm upon the victim.
As previously indicated, the defendant took the witness stand in his own defense and testified he did not intend to kill the victim. The jury’s verdict indicates that they did not accept this testimony as truthful. In State v. Captville, 448 So.2d 676, 680 (La.1984) appears the following:
Further, the jurors obviously (and reasonably) concluded that defendant’s version of the events immediately preceding the fatal shot was a fabrication designed to deflect blame from him.... Under these circumstances, the jurors’ conclusion that defendant was not testifying truthfully could reasonably support an inference that the “truth” — if told by him as the only survivor of the two people in the apartment — would have been unfavorable to his “accidental discharge” defense.[4]
When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant’s own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. An evaluation of the reasonableness of other hypotheses of innocence provides a helpful methodology for determining the existence of a reasonable doubt. As we have recognized in such cases as State v. Wright, 445 So.2d 1198 (La.1984), State v. Graham, 422 So.2d 123 (La.1982), and State v. Sutton, 436 So.2d 471 (La.1983), the court does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational juror could not “have found proof of guilt beyond a reasonable doubt”. Jackson v. Virginia, [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)], above.
Under the facts of the instant case, there are two possible factual hypotheses pertaining to the defendant’s intent at the time he beat the victim; either he had the specific intent to kill or to inflict great bodily harm upon the victim, or he did not. The defendant testified that he did not have the requisite intent. The jury rejected this fac *1155 tual hypothesis. The only remaining hypothesis is that the defendant had the requisite intent.
Therefore, we believe that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of first degree murder.
This assignment of error is without merit.
DECREE
For the foregoing reasons, the defendant’s conviction is affirmed.[1]
AFFIRMED.

. Such a finding of purposeful misrepresentation reasonably raises the inference of a "guilty mind”, just as in the case of “flight” following an offense or the case of a material misrepresentation of facts by a defendant following an offense. See State v. Davenport, 445 So.2d 1190 (La.1984). "Lying” has been recognized as indicative of an awareness of wrongdoing. See State v. Rault, 445 So.2d 1203 (La.1984), in which this court, in rejecting as unreasonable an asserted "hypothesis of innocence" (based on defendant’s own statement), stated:
"The jury could have reasonably concluded that Rault concocted this version of the crime to hide his own guilt". 445 So.2d at 1213.
Any contrary implications in State v. Savoy, 418 So.2d 547 (La.1982), and State v. Shapiro, 431 So.2d 372 (La.1983), simply mean that such evidence, although admissible to support a “guilty mind”, are not alone sufficient to convict. (Emphasis added)

. Additionally, in his brief to this court, but not in an assignment of error, the defendant had made a request for patent error review. This court routinely reviews the record for errors patent, whether or not such a request is made by a defendant. Under La.C.Cr.P. art. 920 (2), we are limited in our patent error review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record, we have found no patent errors.