# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-53

**STATE OF LOUISIANA**

**VERSUS**

**JERRY STEINLE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR128317
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Thomas E. Guilbeau**
**Katherine G. Gondron**
**P. O. Box 3331**
**Lafayette, LA 70502**
**Telephone: (337) 232-7240**
**COUNSEL FOR:**
    **Defendant/Appellant - Jerry Steinle**

**Michael Harson**
**District Attorney - 15th Judicial District Court**
**Keith A. Stutes**
**Assistant District Attorney – 15th Judicial District Court**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**Telephone: (337) 232-5170**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**THIBODEAUX, Chief Judge.**

After he fatally shot David Trahan, the State charged Defendant, Jerry Steinle, with second degree murder. After a trial by judge, Defendant was convicted of manslaughter, a violation of La.R.S. 14:31.

Defendant filed a "Motion for Post-Verdict Judgment of Acquittal," which was denied without a hearing but with written reasons. Defendant was initially sentenced to three years at hard labor, suspended. The State filed a motion to reconsider the sentence alleging that the sentence imposed was an illegal sentence. The trial court sentenced Defendant to one year incarceration at hard labor, credit for time served, and home incarceration for the remainder of the sentence.

Defendant perfected a timely appeal and now alleges three assignments of error: (1) the trial court erred by convicting Defendant of manslaughter because the State failed to prove that the shooting was not committed in self-defense; (2) the evidence was insufficient to sustain a conviction for manslaughter; and, (3) the trial court erred in denying Defendant's Motion for Post-Verdict Judgment of Acquittal.

For the following reasons, we affirm Defendant's conviction for manslaughter.

I.

**ISSUE**

We shall consider whether the evidence presented was sufficient to convict Defendant of manslaughter.

II.

**FACTS AND PROCEDURAL HISTORY**

Defendant shot Mr. Trahan in Defendant's carport after Trahan wrote with an indelible, black magic marker, "Jerry has sex with little boys f**king

pedophile" on the carport door. The victim died on Defendant's front lawn as a result of the gunshot wounds.

Several witnesses testified regarding the shooting. Margaret Moore, Defendant's next door neighbor, described how on the day of the shooting, as she walked to her mailbox, she heard angry voices next door. She testified that she heard someone say, "F**k you Jerry." She turned quickly to go back into her house and heard gunshots—two shots close together, then one shot. She then saw the victim walk out from Defendant's carport and collapse on the ground.

Though Ms. Moore did not know the victim, she testified that she recognized him from an incident that happened in 2005. She and several neighbors observed the victim standing on the roof of Defendant's house when he was not home. The victim was spray painting a word on the roof. The victim told the assembled group to keep their kids away from Defendant. The victim then spray painted the word "pedophile" across the roof where it could be seen from the street.

Three other witnesses, Edmond Buquet, James Matte, and Jennifer Camel, testified that they heard shots and saw the victim leave Defendant's carport and collapse in the front yard.

Trenton Langwell, a detective with the Lafayette City Police Department, described the crime scene. He saw a handwritten message, "Jerry has sex with little boys f**king pedophile," written on the carport door. Christopher Cormier was the crime scene technician for the Lafayette Parish Metro Forensic Office at the time of the shooting. He testified that Defendant had security bars on all the windows and deadbolts on all the doors, including deadbolts on the hinge side of the doors. Inside the house, he found two handguns, including the gun used to shoot the victim, and an illegal handgrip shotgun. He also found nine cases of ammunition for the various guns. He stated that he found a black magic marker clipped to the victim's shirt.

Detective Brad Robin of the Lafayette Police Department talked with Defendant after he was arrested and taken to police headquarters. He stated that he observed no injuries to Defendant. He testified that the victim had a blood/alcohol content of .2 percent at the time of death. He verified that Defendant never filed a complaint about the victim prior to the shooting.

Defendant testified in his own defense. When questioned about the 2005 roof incident, he testified that he was out of town when the incident occurred. Defendant further related an incident in 2007 when the victim appeared in his carport. He described how he heard someone prowling around the house. When he investigated, he switched on several security lights, and he saw the victim. Defendant testified that the victim repeatedly told him that he was there to stab him while the victim held a hand behind his back and walked backwards out of the carport. Defendant stated that the victim was there to kill him, but when he turned on the lights, the victim backed down. Although he did not see a knife, he saw the victim throw something into his car before he drove away. Defendant testified that he did not notify the police of this threat.

Defendant testified that he was home alone on the night of the shooting. He stated that he heard the carport doorbell ring. He explained that he waited a few minutes, and then he heard a noise outside the carport door. He checked through the door's peephole and saw no one. He then peered through the front door peephole and saw no one. He testified that when he looked out the front living room window, he saw an SUV pull out of the driveway. He then went out the carport door, looked around, and when he went to walk back into the house, he saw the writing on the door. He explained that he got worried because he knew who had written on the door. Thus, when he went into the house to get some Windex to clean the door, he tucked a gun into his belt. As he was attempting to remove the writing from the door, he heard a sound behind him. He turned and saw the victim standing about thirteen feet away.

When he ordered the victim off his property, the victim yelled, "F**k you Jerry." He stated that he demanded the victim leave several times, and the victim repeatedly said "F**k you" and advanced. He stated that the victim stopped and dropped down like he was going to get something out of his boot, then reached up and hit him on the head, knocking off his glasses. The victim said that he was going to kill Defendant, and Defendant saw a knife or a blade of some kind. Defendant pulled the gun and fired three quick shots.

The trial court found Defendant guilty of manslaughter. The court reasoned that Defendant used excessive force and that Defendant's arguments of self-defense did not fit the facts of the case. Defendant appeals.

## Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to prove manslaughter considering the undisputed evidence that Defendant was acting in self-defense. In *State ex rel. D.P.B.*, 02-1742, pp. 4-6 (La. 5/20/03), 846 So.2d 753, 756-57 (footnote omitted) (alteration in original), wherein the accused asserted self-defense to a homicide charge, the supreme court observed:

> "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984). Additionally, when circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove . . . must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; *see State v. Jacobs*, 504 So.2d 817, 820 (La.1987) (all direct and circumstantial evidence must meet the Jackson test); *State v. Porretto*, 468 So.2d 1142, 1146 (La.1985) (La. R.S. 15:438 serves as an evidentiary guide for the jury when considering circumstantial evidence). Furthermore, in a case in which defendant

asserts that he acted in self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. *State v. Brown*, 414 So.2d 726, 728 (La.1982). When defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. *State v. Matthews*, 464 So.2d 298 (La.1985).

The State charged Defendant with second degree murder. Louisiana Revised Statutes 14:30.1 defines second degree murder as the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm." Justifiable homicide is defined, in pertinent part, as:

> When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.

La.R.S. 14:20(A)(1).

The trial court convicted Defendant of manslaughter which is, in pertinent part, defined as:

> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

La.R.S. 14:31(A)(1).

In claiming that the shooting was self-defense, Defendant asserts that the victim meant to, at the very least, inflict serious bodily harm, and he had no choice but to defend himself. In *State v. Griffin,* 06-543, pp. 8-9 (La.App. 3 Cir. 9/27/06), 940 So.2d 845, 851, *writ denied*, 07-02 (La. 9/14/07), 963 So.2d 995, this court reiterated

that the standard in La.R.S. 14:20 is whether a defendant's subjective belief that he was in danger was reasonable:

> Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. *State v. Hardeman*, 467 So.2d 1163 (La.App. 2d Cir.1985). Although there is no unqualified duty to retreat, the possibility of escape is a factor to consider in determining whether a defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger. *State v. Brown*, 414 So.2d 726 (La.1982).

*State v. Spivey*, 38,243, p. 6 (La.App. 2 Cir. 5/12/04), 874 So.2d 352, 357.

> In cases where the defendant claims self-defense as a justification, the absence of a weapon from the victim's person or immediate reach is often a critical element of the state's proof. *See State v. Davis*, 28,662 (La.App. 2d Cir.9/25/96), 680 So.2d 1296. . . . The absence of weapon on the victim, however, is not dispositive of the issue.

> La.R.S. 14:20(1) recognizes the additional possibility that a killing may be justified to prevent the infliction of great bodily harm. While weapons may be used to inflict such harm, it is often the case that an opponent who is physically large, powerful or skilled at fighting will inflict great bodily harm upon a weaker adversary.

*State in Interest of D.S.*, 29,554, p. 3 (La.App. 2 Cir. 5/7/97), 694 So.2d 565, 567.

Here, Defendant compares the circumstances in his case to *State v. Savoy,* 418 So.2d 547 (La.1982), wherein the supreme court acquitted the defendant of second degree murder because the circumstantial evidence did not rebut beyond a reasonable doubt the defendant's claim of self-defense. Ms. Savoy admitted shooting her live-in boyfriend after a drunken argument. She stated that he attacked her with a knife, and, after a struggle, she shot him once in the chest.

The supreme court noted that while the evidence viewed in a light most favorable to the prosecution might convince a trier of fact that Ms. Savoy fired the shot with the intent to either kill the victim or to cause great bodily harm, none of the physical evidence indicated whether or not the victim attacked Ms. Savoy:

> neither the trajectory of the bullet, nor the distance from which the bullet was fired, nor the fact that the victim's knife was found in the truck (and not on the porch), nor the fact that Savoy did not appear to have been in a struggle—none of these facts is inconsistent with the reasonable possibility of self-defense.

*Id.* at 550.

Defendant argues in brief "that the facts and circumstances of this case and the direct testimony of the Defendant/Appellant that he was attacked by the decedent while the decedent was highly belligerent, severely intoxicated and armed with a deadly weapon, to wit, a knife, that no rational trier of the facts of this case could have regarded the State as having proved its case beyond a reasonable doubt." Specifically, Defendant argues that evidence exists of an attack by the victim. Ms. Moore testified she heard a loud argument and someone saying, "F**k you Jerry." He asserts that he had a red mark on his face where the victim struck him, knocking off his glasses, which was attested to by one of the witnesses, Edmond Buquet. Defendant insisted at trial that the victim said he was going to kill him and pulled out a knife or a blade. He now argues that, while there was no testimony that a knife was located on or near the victim, none of the five testifying police officers ever stated that they had actually searched for a knife or a weapon that could have been thrown away by the decedent.

Defendant's account, however, is not supported by the testimony of the other witnesses. Indeed, Ms. Moore stated that she did not see the victim with anything in his hands when he came out from under the carport. The other three witnesses who heard shots and saw the victim come out from the carport did not

7

report seeing him with anything in his hands or see him throw anything away as he advanced. Except for Ms. Moore, who only heard the victim cursing Defendant, no one reported hearing the victim threaten to kill him. Moreover, Detective Robin testified that he took photographs of Defendant and spoke with him right after he was brought into the police station, and Detective Robin did not observe any marks on Defendant's face.

In contrast to *Savoy*, where additional evidence supported the defendant's account of self-defense, Defendant's self-serving testimony in this case was not sufficient appreciable evidence of an overt act on the part of the victim such that would have manifested in Defendant's mind a reasonable belief of an intention on the victim's part to kill or do great bodily harm. *See State v. Jones*, 99-798 (La.App. 5 Cir. 11/10/99), 748 So.2d 1176, *writ denied*, 00-306 (La. 12/08/00), 775 So.2d 1076 and *State v. Woodhead*, 03-1036 (La.App. 5 Cir. 1/27/04), 866 So.2d 995, *writ denied*, 04-598 (La. 7/2/04), 877 So.2d 144.

Moreover, we weigh the proportionality of Defendant's response to the threat to determine whether Defendant had a reasonable belief that the killing was necessary. *State v. Mincey*, 08-1315 (La.App. 3 Cir. 6/3/09), 14 So.3d 613. Though no unqualified duty of retreat exists, as noted in *State v. Ingram*, 45,546, p. 10 (La.App. 2 Cir. 6/22/11), 71 So.3d 437, 445, *writ denied,* 11-1630 (La. 1/11/12), 77 So.3d 947, "[t]he unavailability of the retreat defense does not end the inquiry into the reasonableness of the use of force even when the accused is in his own home." Defendant testified that he made no effort to go into the house and call police once he saw the victim standing in the carport. Rather, he chose to engage in a verbal confrontation with the victim and later fired three shots.

In accordance with *Hardeman*, 467 So.2d 1163, we also consider Defendant's knowledge of the victim's bad character. Though we acknowledge that evidence exists that the victim harassed Defendant in the past when he painted the

word "pedophile" on Defendant's roof, nothing in the record indicates that the victim previously threatened Defendant's life. Defendant claims that the victim threatened to stab him in a separate encounter two years after the roof incident. Defendant never reported this incident to the police. When asked why he did not report it, Defendant stated, "I debated it[,] but I figured, well, it's my word against his[.]" Thus, the roof incident is the only evidence of the victim harassing Defendant, and we conclude that incident, while disturbing, did not threaten Defendant's life.

We find that the State met its burden of proof that Defendant did not shoot the victim in self-defense, and the evidence was sufficient to support a conviction of manslaughter. While the victim made very serious accusations against Defendant, a rational factfinder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-defense. No evidence exists that the victim was armed, and Defendant made no effort to retreat when confronted by the victim. Defendant's actions, therefore, were disproportionate to any perceived threat posed by the victim.

IV.

## DISPOSITION

We affirm Defendant's conviction for manslaughter.

**AFFIRMED.**

9