SCHOTT, Chief Judge.
Defendant was convicted of first degree murder of Gloria Sargent and was sentenced to life imprisonment. The issue is whether the jury erred in failing to find defendant not guilty by reason of insanity.
On Sunday morning, September 20, 1987, defendant was apprehended after he had repeatedly shot Alvin Sargent and stabbed his wife, Gloria, to death. The officers had chased after defendant’s speeding car suspecting him of purse snatching. When he stopped he got out of the car and reached for a gun in his waistband. The officers wrestled the gun from him and he said something to the effect that he “didn’t mean to kill him” or “the devil made me kill him”. They arrested him and found a carton of .22 shells and a bank bag containing money in his car.
The Sargents and defendant and his wife were acquainted through their church where Sargent was an elder and the head of the financial committee and defendant was a deacon whose jobs included assisting Sargent with the church collections each week. The standard procedure was for Sargent, defendant, and another deacon to count the money after the main service on Saturday (all services in this church were on Saturdays) and for Sargent to deposit-the money later that day. On Saturday, September 19 the group decided to meet the next morning to count the money. Sargent placed the bag of money in a suitcase and took it home. Another collection was taken up at the youth services that evening. Defendant was there and asked the youth leader to give the money to him to give to Sargent, but she refused. Later Sargent called defendant and the others, cancelled the Sunday meeting, and said he would simply deposit the money on Monday and let the bank count it.
On Sunday morning Sargent left his wife in bed asleep and went out to his yard to work. Defendant was walking by the house and asked Sargent if he could borrow a saw. When Sargent turned to get it defendant shot him four times. Defendant later told the police he “felt compelled” to shoot Sargent. After doing this defendant went into the house where he first shot at Mrs. Sargent and then picked up a knife from the kitchen counter, chased her into the bedroom and repeatedly stabbed her. He returned to the kitchen where he saw a suitcase and took from it the bank bag of money. He got a can of gasoline from the garage and poured it on Alvin Sargent’s body thinking him dead but Sargent jumped up and defendant fled only to be captured shortly afterward.
Sargent testified that he and his wife had been good friends with the defendant and his wife; that he had loaned some money to defendant which had not been repaid, but he had not pressed him for payment. He thought defendant appeared normal prior to the attack and did not recall hearing any airplanes flying over at the time of the attack.
*396 Jacqueline Wilson, defendant’s wife, testified as follows: While he was in the Army, he was stationed in Vietnam, and his job was to collect and reassemble the bodies of servicemen killed in combat. When he returned, he went to work for a mortician, but he began to drink heavily. Although he had changed jobs, he had just gotten a promotion in his current job before the killing. In addition, she and defendant were scheduled the next day to receive a small business loan for a candy-making business they were starting. Defendant had been receiving counseling from the Veteran’s Center, and had gotten a disability adjudication. He deposited money for the church on prior occasions, and when he left her on the morning of the killing, he told her he would be right back.
Defendant had been receiving outpatient treatment for substance abuse and his emotional problems from the Vietnam Veterans Resource Center and the Veterans Administration Medical Center. Dr. James Russell, a clinical psychologist who had been treating him for four months prior to the killing, testified that he had a severe alcohol addiction, and was using marijuana and cocaine. He had last seen defendant about a month before the killing.
Dr. Russell and his supervisor, Dr. Owen Scott, another clinical psychologist with training in post-traumatic stress disorder (PTSD), examined defendant in prison after the shooting. They took a statement from him and administered various tests. In this statement, he told them he had carried a gun that morning because he had first stopped by the Fisher Project to collect some money owed him; he then went to the flea market, but because it was not open yet, he went to the Sargent’s home, which was nearby. He found Sargent in the back yard and volunteered to help him with the yard work. He heard jets flying overhead, and suddenly he heard voices telling him to attack. Thinking he was back in Vietnam, he pulled his gun and shot Sargent. He saw him fall and then ran into the house. During this interview, he only remembered looking out the window and then walking to his car, with people shouting at him. He told them he pulled a gun on the officers who captured him because they looked to him like Viet Cong soldiers.
Approximately six weeks later, the doctors interviewed him again, this time placing him under hypnosis. During this interview, he told them that prior to going to the Fisher Project that morning, he had visited the St. Bernard Housing Project and had smoked crack cocaine. When he was inside the Sargents’ house, he heard Vietnamese voices and gunshots. He picked up a knife and chased Mrs. Sargent through the house and stabbed her in the bedroom. He then picked up the bag of money as he left the house.
Dr. Scott qualified as an expert in clinical psychology with reference to PTSD especially as it relates to Vietnam Veterans. He testified as follows: Veterans who were exposed to casualties in the war, like defendant, suffered many guilt feelings, due not only to his job of collecting and reassembling bodies but also to the low esteem in which other soldiers held them. People under the influence of drugs are more likely to have disassociative episodes or flashbacks, which can be triggered by sounds, smells, or sights. Defendant began using drugs while in Vietnam and he was stationed at an air base during part of the war!
Dr. Scott diagnosed defendant’s condition as PTSD. He theorized the killing of Mrs. Sargent and the shooting of her husband was most likely a sudden disassocia-tive episode which was triggered by jets flying overhead. While in such a state, defendant could not distinguish right from wrong. Dr. Scott said defendant would not have known the difference between right and wrong. He conceded that defendant’s theft of the money was not entirely consistent with his thought that he had to defend himself against the enemy, but he theorized defendant may have grabbed the money bag as a matter of habit. Dr. Scott thought it was unlikely that the killing was a part of a planned robbery or an impulsive robbery. He thought it was most likely the result of a PTSD flashback.
*397 It was stipulated that an air base was located not far from the murder scene, and reserve units flew out of that base.
In rebuttal, the State presented Dr. Kenneth Ritter and Dr. Aris Cox, psychiatrists who had examined defendant and found him competent to stand trial. However, they had neither seen the medical records nor made a determination of his sanity at the time of the offense. Based upon a hypothetical question which fairly encompassed the facts of this case, both doctors testified that in their opinions the perpetrator would have known right from wrong, especially in light of his taking the money and fleeing the scene thereby demonstrating that he knew he had done something wrong. While both doctors admitted they had no formal training in PTSD, Dr. Ritter stated that PTSD is simply a new name for traumatic neurosis which he has considered in “tremendous numbers” of cases, and he had testified in the first case of PTSD in Vietnam Veterans twenty years ago.
By his first assignment of error defendant contends the jury erred in failing to find him not guilty by reason of insanity. Before considering the merits of this position we must address a procedural flaw in the case. Defendant never entered a plea of not guilty by reason of insanity. He simply pled not guilty. Nonetheless the entire case proceeded as though the insanity plea had been made. Before trial the court appointed a sanity commission and at trial allowed evidence of insanity pursuant to C.Cr.P. art. 651 as though the insanity plea had been made. The only real issue before the jury was that of insanity. The state never objected to the evidence of insanity. The judge instructed the jury on the issue of insanity and presented to the jury a verdict of not guilty by reason of insanity. Consequently, we consider the absence of a formal plea in this case to be a harmless formal defect which had no detrimental effect on the rights of the defendant. We have reviewed the case as though there was a formal plea of not guilty by reason of insanity.
A defendant in a criminal case is presumed to be sane. R.S. 15:432. The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. C.Cr.P. 652. If the circumstances indicate that because of a mental disease or defect the offender was incapable of distinguishing right from wrong with reference to the conduct, the offender shall be exempt from criminal responsibility. R.S. 14:14. In the appellate review of the trial court’s rejection of the defense of insanity the court must determine whether, under the facts and circumstances of the case, any rational fact finder, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. State v. Claibon, 395 So.2d 770, 772 (La.1981). The determination of defendant’s sanity at the time of the offense is a factual matter that should be left to the fact finder. State v. Moore, 568 So.2d 612 (La.App. 4th Cir.1990).
Applying these principles to the case at hand we readily find no merit to this assignment of error. For the jury this was a question of the credibility of defendant and the other witnesses and the weight to be given to the opinions of experts who testified on both sides of the issue. Viewing the evidence in the light most favorable to the prosecution little credibility need be given defendant and his witnesses and more weight should be given to the testimony of Drs. Ritter and Cox than to those of Dr. Scott. With this approach we cannot conclude that the jury erred in concluding that the defendant failed to prove that he was more likely insane than not when he committed this offense.
By his other assignment defendant contends that the trial court erred in giving an erroneous jury instruction on reasonable doubt. The instruction is virtually identical to the one condemned in Cage v. Louisiana, — U.S. —, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Since defendant failed to object to the charge he may not raise the issue on appeal. State v. Dobson, 578 *398 So.2d 533 (La.App. 4th Cir., 1991). This argument is without merit.
In our review of the record for errors patent we found none other than the lack of a formal plea of not guilty by reason of insanity which has already been addressed.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.